JEANNE H. RAYPHAND
Box 502020
Saipan, MP 96950
   Telephone Nos.:  (670) 287-9807
   E-Mail:        jeanneesq@yahoo.com

Attorney for Plaintiff


## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS


| | |
|---|---|
| JOHN H. DAVIS, JR.,         ] | CIVIL ACTION NO.  14-0002 |
|                    ] | |
|       Plaintiff,     ] | |
|                    ] | PLAINTIFF'S REPLY TO OPPOSITION |
|     vs.            ] | TO MOTION FOR SUMMARY |
|                    ] | JUDGMENT |
| COMMONWEALTH ELECTION   ] |     AND |
| COMMISSION; FRANCES M. SABLAN, ] | PLAINTIFF'S OPPOSITION TO |
| Chairperson of Commonwealth Election ] | DEFENDANTS' CROSS-MOTION FOR |
| Commission; ROBERT A. GUERRERO, ] | SUMMARY JUDGMENT |
| Executive Director of Commonwealth  ] | |
| Election Commission; ELOY INOS,    ] | |
| CNMI Governor              ] | Hearing:  April 24, 2014 |
|                    ] |           1:30 p.m. |
|       Defendants.  ] | |
| _____] | |

TABLE OF CONTENTS

Jurisdiction Over Supplemental Claims                                      1

Notice of Claims                                                          2

Defendants                                                               2

Denial of Right to Vote Is Undisputed                                    3

Denial of Right to Vote on Account of Race                               4

The Right to Vote is A Fundamental Right                                  6

No Compelling State Reason                                                6

Insular Affairs Doctrine                                                  7

Not Special Interest Election                                            7

Persons of Northern Marianas Descent are Not Disproportionately Affected  8

The Right to Vote is Preservative of All Rights                          9

## REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
## AND
## OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT

As stated in Paragraph 1 of the complaint, "[t]his action is for an injunction and declaratory judgment enjoining defendants from denying United States citizens who are not of Northern Marianas descent the right to vote on any amendment to the Commonwealth Constitution or on any other issue and declaring Article XVIII § 5( c) of the Commonwealth Constitution and Public Law 17-40 to be null and void in violation of the Fourteenth and Fifteenth Amendments of the United States Constitution, 42 U.S.C. § 1971(a)(1), and 42 U.S.C. § 1983.  Plaintiff also seeks relief as a taxpayer to enjoin the expenditure of public moneys for the administering and enforcing of Article XVIII § 5( c) of the Commonwealth Constitution and Public Law 17-40. "

### Jurisdiction Over Supplemental Claim

Defendants do not dispute that this Court has jurisdiction over the claims for the right to vote; however, defendants dispute this court's jurisdiction over the supplemental claim brought as a taxpayer under the Commonwealth Constitution.  Having jurisdiction over this civil action, this Court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 42 U.S.C. § 1367.  The claim to enjoin the expenditure of public moneys for the administering and enforcing of Article XVIII § 5( c) of the Commonwealth Constitution and Public Law 17-40 clearly are so related to the claims for the right to vote in this case that this Court has supplemental jurisdiction over the claim.

1

It does not matter that the complaint does not assert Section 1367 as a basis of jurisdiction, since the facts alleged in the complaint are sufficient to establish jurisdiction. *See Andrus v. Charlestone Stone Prod. Co., Inc.* 436 U.S. 604, 608 n. 6, 98 S.Ct. 2002, 56 L.Ed.2d 570 (1978); *Radici v. Associated Insurance Companies,* 271 F.3d 737, 740 (9th Cir. 2000).

Even if 42 U.S.C. § 1367 were required to be listed in the complaint as a basis for jurisdiction over any supplemental claim, then the complaint may amended to include it. Regardless, the relief sought, i.e., enjoining defendants from expending public moneys to administer and enforce Article XVIII(5)( c) and Public Law 17-40 (Complaint, p. 17), is relief that can be granted under the § 1983 claims.

## Notice of Claims

The claims that Article XVIII § 5( c) and Public Law 17-40 violate the Fourteenth and Fifteenth Amendments of the United States Constitution are brought pursuant to 42 U.S.C. § 1983 as shown by Paragraphs 1, 40, 70, 71, and 73 of the Complaint.

The claims of violation of 42 U.S.C. § 1971 are likewise brought pursuant to 42 U.S.C. § 1983 as shown by Paragraphs 1, 40, 70, 71, and 73 of the Complaint. A private right of action under § 1971 has been recognized. *See Schwier v. Cox*, 340 F.3d 1284 (11the Cir. 2003).

The complaint adequately gives notice of the claims as is clear from the defendants' answer and opposition to the motion for summary judgment. *See* Defendants' Opposition/Cross-Motion, pp. 9-30.

## Defendants

The individual defendants are all served in their official capacities. Because this is an

2

action for declaratory and injunctive relief, these individual defendants who are public officials are considered "persons" for purposes of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n. 10 (1989); *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007); *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 962 F.2d 1366, 1371 (9th Cir. 1992). Official-capacity suits filed against state officials are merely an alternative way of pleading an action against the entity of which the defendant is an officer. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

The Governor, as well as Guerrero and Sablan who have taken specific actions to administer and enforce Article XVIII(5)( c) and Public Law 17-40, are each  proper defendants in this action brought under § 1983.

The Commonwealth Constitution authorizes a taxpayer to "bring an action against the government or one of its instrumentalities in order to enjoin the expenditure of public funds  for other than public purposes . . . . " Commonwealth Const. art. X § 9.

Therefore the Commonwealth Election Commission and the Governor are proper defendants in this case to enjoin expenditure of public funds pursuant to Article X § 9. *See Rayphand v. Tenorio*, 2003 MP 12, 6 N.M.I. 575 (2003).

### Denial of Right to Vote Is Undisputed

Defendants do not dispute that the plaintiff and other persons not of Northern Marianas descent are being denied the right to vote by Article XVIII(5)( c) and Public Law 17-40.

**Denial of Right to Vote on Account of Race**

Black's Law Dictionary defines "race" as

> [a]n ethnical stock; a great division of mankind having in common certain
>
> distinguishing physical peculiarities constituting a comprehensive class
>
> appearing be derived from a distinct primitive source.  A tribal or national
>
> stock; a division or subdivision of one of the great racial stocks of
>
> mankind distinguished by minor peculiarities.

Black's Law Dictionary 1258 (6th ed. 1990).

> Throughout the history of the Northern Mariana Islands, those who
>
> considered themselves as the people of the Northern Mariana Islands have
>
> been the Charmorros and the Carolinians who settled on the various
>
> islands, formed a cohesive social group, worked for the political and
>
> economic betterment of the Northern Mariana Islands, and considered
>
> these islands to be their home.

Analysis of the Constitution of the Commonwealth of the Northern Mariana Islands [hereinafter
"Analysis"], p. 171 (Dec. 6, 1976).

Although the Analysis states that the "Convention did not use a racial or ethnic
classification" "to define what is meant by a person of at least one-quarter Northern Marianas
Chamorro or Northern Marianas Carolinian blood," the classification of persons of Northern
Marianas descent is clearly a racial classification.   Discussion in Analysis, pp. 171-175. *See also*
*Wabol. v. Villacrusis,* 958 F.2d 1450 (9th Cir. 1992) ("race-based restriction").

4

The Convention carefully excluded from the definition anyone who was not Northern Marianas Chamorro or Northern Marianas Carolinian blood, eliminating anyone from countries other than the Trust Territory, anyone born in the Trust Territory who at birth or otherwise acquired another nationality, and even eliminating Trust Territory citizens who were from other districts within the Trust Territory.   *See* Analysis, p. 171-175.

The very object of the drafters of the Commonwealth Constitution was to treat early Carolinian and Chamorro people "as a distinct people, commanding their own recognition and respect," *see Rice v. Cayetano,* 528 U.S. 495, 515 (2000), thereby creating a racial classification.

The Legislature, in enacting Public Law 17-40, likewise made it clear that it was referring to "natural persons of Chamorro and Carolinian" descent, and that the "people of the Northern Mariana Islands" were Chamorro and Carolinian people. *See* Public Law 17-40 § 1.  Again, like the Convention in drafting Article XII, the Legislature clearly intended that the Northern Marianas Descent Registry be a registry of persons of Chamorro and Carolinian persons; in other words, a race-based registry for Chamorro and Carolinian persons who were blood descendants of those Chamorro and Carolinian persons who were born and domiciled in the Northern Marianas prior to 1950.   In doing so, and in claiming that it was only "persons of Northern Marianas Chamorro and Carolinian descent who negotiated and voted for the Covenant," Public Law 17-40 § 1, the Legislature ignored the fact that citizens of the Trust Territory from other districts owned land in the Northern Marianas Islands, had purchased land, built homes, raised families, and had become a part of the community that negotiated and voted for the Covenant. *See* Analysis, p. 166 ["From the end of World War II to the effective date of the Constitution, the law enforced in the Northern Mariana Islands has forbidden alienation of land to persons not

5

citizens of the Trust Territory of the Pacific Islands."]; *see also* 51 TTC § 11 (1970 Supp. No. 1); 51 TTC § 11 (1980).  At the time the Covenant was negotiated and voted on, every Trust Territory citizen who was 18 years old or older and met requirements of residence in the Trust Territory and in the Northern Mariana Islands were eligible to vote on the Covenant and subsequently on the Commonwealth Constitution.  *See* 43 TTC §§ 1 & 251 (1970); 43 TTC §§ 1 & 251 (1980).

Furthermore, the definition of "Native Hawaiian" at issue in the *Cayetano* case was based on residence in Hawaii as of a certain date and continued residence thereafter, just as the definition of "Northern Marianas descent" is based on residence in the Northern Mariana Islands as of a certain date and thereafter Trust Territory citizenship.

Both definitions are based on ancestry, and ancestry is a proxy for race in both the *Cayetano* case and in this case.  Therefore, denying voting rights to persons who are not of Northern Marianas descent is denial of the right to vote on account of race and violates the Fifteenth Amendment of the United States Constitution, 42 U.S.C. § 1971(a), and 42 U.S.C. § 1983.

### The Right to Vote is a Fundamental Right

The defendants do not dispute that the right to vote is fundamental in the Commonwealth of the Northern Mariana Islands.  Defendants' Opposition/Cross-Motion, p. 23.

### No Compelling State Reason

Even if this Northern Marianas descent classification were not a racial classification, there is no compelling state interest in granting the right to vote to one group of eligible voters

6

and denying the right to vote to another group of eligible voters based solely on whether that person or his ancestors were born or domiciled in the Northern Mariana Islands by 1950.

## Insular Affairs Doctrine

The defendants rely on *CNMI v. Atalig* (jury trial), *Wabol v. Villacrusis* (land alienation), and *Rayphand v. Sablan* (Senate apportionment), cases which considered whether the United States Congress acted within its authority in agreeing to certain provisions of the Covenant and whether the implementation of those Covenant provisions in Commonwealth law were unconstitutional.

The Insular Cases provided "the legal framework and justification for allowing otherwise unconstitutional practices to continue in U.S. territories." *Rayphand v. Sablan*, 95 F.Supp. 1133, 1139 (D.N. 1999).

This, however, is not such a case. No provision of the Covenant is being challenged, and the Insular Affairs Doctrine is not applicable in this case to deny United States citizens the right to vote on a public issue, i.e., amendment of the Commonwealth Constitution.

The Covenant is not at issue, and the Covenant certainly does not restrict voting to persons of Northern Marianas descent. Article XVIII(5)( c) and Public Law 17-40 are not "acceptable applications of Covenant § 805." Defendants' Opposition, p. 26. No majority of voters can be allowed to deny other United States citizens the right to vote. *See* Defendants' Opposition/Cross-Motion, p. 26-27.

## Not Special Interest Election

The Commonwealth is a republican form of government as required by Article II § 203 of

the Covenant.   The Commonwealth of the Northern Mariana Islands is to be treated as a state.

Covenant, § 501.   The Commonwealth is not a "special project district" such as the water district

storage/reclamation districts in the *Salyer* and *Ball* cases cited by defendants.   *See* Defendants'

Opposition, p. 19.  A vote on any amendment of the Commonwealth Constitution is not a

"special interest" election.  All persons residing in the Commonwealth, whether Northern

Marianas descent or not, have an interest in any amendment to the Commonwealth Constitution.

In fact, all persons residing in the Commonwealth have an interest in any land alienation

restrictions applicable in the Commonwealth.

The Covenant and its terms are not at issue in this case.  Although the Covenant allows

the "Government of the Northern Mariana Islands" to regulate the alienation of land in the

Commonwealth, the Covenant does not restrict the right to vote.    And, the "Government of the

Northern Mariana Islands" is not limited to persons of Northern Marianas descent.

The only issue in this case is whether a United States citizen and registered voter who is

not of Northern Marianas descent can be denied the right to vote on a public issue, i.e., the

amendment of the Commonwealth Constitution.  This is not a special interest election.

**Persons of Northern Marianas Descent are Not Disproportionately Affected**

Defendants argue that "NMDs are disproportionately affected by any amendment to

Article XII." Defendants' Opposition/Cross-Motion, p. 18.

An amendment to the Commonwealth Constitution, regardless of whether it is Article I or

Article III or Article XII or any other Article in the Constitution affects **all** people in the

Commonwealth.  And, all people – all persons eligible to vote pursuant to Article VII of the

8

Commonwealth Constitution – have the right to vote on any proposed amendment to the Commonwealth Constitution.

Article XII gave persons of Northern Marianas descent the special privilege of being the only authorized persons eligible to acquire land[1] in the Commonwealth, all to the particular detriment to other legal landowners in the Commonwealth who are not of Northern Marianas descent. For example, Trust Territory citizens who moved to the Northern Marianas Islands after 1950, who legally purchased land, built their homes, raised their families here and became a part of the community here are prohibited by Article XII from passing their land to their children who are not of Northern Marianas descent.

Persons of Northern Marianas descent, as currently defined by Article XII, will not be disproportionately affected by any amendment to Article XII.

### The Right to Vote is Preservative of All Rights

The right to vote is preservative of all rights. *Yick Wo v. Hopkins*, 118 U.S. 356, 370, 6 S.Ct. 1064,1071, 30 L.Ed. 220 (1886).

> No right is more precious in a free country than that of having a voice in
>
> the election of those who make the laws under which, as good citizens, we
>
> must live. Other rights, even the most basic, are illusory if the right to
>
> vote is undermined. Our Constitution leaves no room for classification of

---

[1] Defendants' "undisputed fact" citing Art. XII § 1 (on page 2) is erroneous. Article XII of the Commonwealth Constitution restricts the acquisition – not ownership – of permanent and long-term interests in land. Commonwealth Const. art. XII § 1. In fact, persons not of Northern Marianas descent as defined by Article XII § 4 do own land in the Commonwealth.

9

people in a way that unnecessarily abridges the right.

*Westberry v. Sanders,* 376 U.S. 1, 17, 84 S.Ct. 526, 534, 11 L.Ed.2d 481 (1964).

> [T]he right of suffrage is a fundamental matter in a free and democratic
> society.  Especially since the right to exercise the franchise in a free and
> unpaired manner is preservative of other basic civil and political rights,
> any alleged infringement of the right of citizens to vote must be carefully
> and meticulously scrutinized.

*Reynolds v. Sims*, 377 U.S. 533, 561-562, 84 S.Ct. 1362, 1381, 12 L.Ed. 506 (1964).

For the reasons stated in plaintiff's motion for summary judgment and in this Reply to Opposition to Motion for Summary Judgment & Opposition to Defendants' Cross-Motion for Summary Judgment, plaintiff is entitled to summary judgment for the relief prayed for in his complaint.

Respectfully submitted,

JEANNE H. RAYPHAND

Attorney for Plaintiff    F 0166

10