IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| JOHN H. DAVIS, JR.,<br><br>Plaintiff,<br><br>v.<br><br>COMMONWEALTH ELECTION COMMISSION; FRANCES M. SABLAN, Chairperson of Commonwealth Election Commission; ROBERT A. GUERRERO, Executive Director of Commonwealth Election Commission; ELOY INOS, Governor of the Commonwealth of the Northern Mariana Islands,<br><br>Defendants. | Case No.: 1-14-CV-00002<br><br>**DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR SEQUESTRATION OF BALLOTS PENDING APPEAL** |

## I.   INTRODUCTION AND BACKGROUND

On November 4, 2014, the qualified voters of the Commonwealth of the Northern Mariana Islands ("Commonwealth" or "CNMI") will go to the polls to vote on House Legislative Initiative 18-1 ("L.I. 18-1"), a proposed amendment to Article XII of the Commonwealth Constitution. Article XII restricts alienation of land in fee simple to persons of Northern Marianas descent ("NMDs"). Plaintiff John H. Davis, Jr. ("Davis"), a non-NMD, sued to vindicate his right to vote on L.I. 18-1, notwithstanding Commonwealth laws that limited voting rights on Article XII amendments to NMDs.  On May 20, 2014, this Court decided that the challenged voting restrictions violated the Fourteenth and Fifteenth Amendments of the United States Constitution. *See* Memorandum Decision and Order ("MDO"), ECF No. 15. The Court

entered an injunction forbidding the Commonwealth from enforcing those restrictive laws "insofar as such enforcement would prevent or hinder Plaintiff and other qualified voters who are not NMDs from voting on Article XII ballot initiatives." (*Id.* 51.) The Court's decision did not affect the validity of Article XII.  Defendants Commonwealth Election Commission ("CEC"); Frances M. Sablan, Chairperson of the CEC; Robert A. Guerrero, Executive Director of the CEC; and Eloy S. Inos, Governor of the Commonwealth, appealed the Court's decision to the Court of Appeals for the Ninth Circuit. *See* Notice of Appeal, June 5, 2014, ECF No. 20.

More than four months later, and barely a month before the election, the Commonwealth filed in the Ninth Circuit an Urgent Motion Under Circuit Rules 27-3(b) for Injunction Pending Appeal. *Davis v. Commw. Election Comm'n*, No. 14-16090 (9th Cir. Oct. 9, 2014), Dkt. Entry 8-1. The Ninth Circuit denied the emergency motion without prejudice to its renewal following presentation to the district court. Order, *Davis v. Commw. Election Comm'n,* No. 14-16090 (9th Cir. Oct. 14, 2014), Dkt. Entry 9 (ECF No. 23).

The Commonwealth Defendants now ask this Court to grant an injunction preventing themselves from tabulating the votes on L.I. 18-1 and instructing them to sequester the ballots until the appeal is decided. (Memorandum in Support of Defendants' Motion for Sequestration of Ballots Pending Appeal ("Motion"), Oct. 15, 2014, ECF No. 26.) The Motion is supported by sworn affidavits of Defendant Guerrero (ECF No. 26-2) and Defendants' counsel, Assistant Attorney General Charles E. Brasington (ECF No. 26-3). Plaintiff has filed an opposition brief (ECF No. 27). Defendants waived the reply. The matter came on for a hearing on October 27. Defendant Guerrero testified as to how the Commonwealth counts and stores ballots, and the minimal cost ($300–$400) of tabulating the initiative votes separately. Additionally, defense counsel requested that if the Court declines to enjoin the tabulation and certification of the

1  initiatives, it enjoin implementation of L.I. 18-1 in the event it passes. Having considered the
2  papers and the arguments of counsel, the Court DENIES the Motion and declines to issue any
3  injunction, for the reasons set forth below.

## II.     LEGAL STANDARD

Generally, the filing of a notice of appeal divests the district court of jurisdiction over the matters being appealed. *Natural Resources Defense Council, Inc. v. Southwest Marine Inc.,* 242 F.3d 1163, 1166 (9th Cir. 2001). However, the district court retains inherent power to enter orders intended "to preserve the status quo during the pendency of an appeal[.]" *Id.* This authority is recognized in Rule 62(c) of the Federal Rules of Civil Procedure, which permits the district court to "suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." With respect to modification, "an appeal from an order granting an injunction does not deprive the district court of jurisdiction to alter the injunction for purposes of maintaining the status quo[.]" *McClatchy Newspapers v. Central Valley Typographical Union No. 46,* 686 F.2d 731, 735 (9th Cir. 1982). The district court has discretion to fashion relief under Rule 62(c). *Southwest Marine,* 242 F.3d at 1168. Any injunctive relief must be "tailored to remedy the specific harm alleged." *Lamb-Weston, Inc. v. McCain Foods, Ltd.,* 941 F.2d 970, 974 (9th Cir. 1991).

The factors for the court to consider in evaluating motions for stays pending appeal are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987), *quoted in Golden Gate Restaurant Ass'n v. City and County of San Francisco,* 512 F.3d 1112, 1115 (9th Cir. 2008). This

standard is similar to the one for preliminary injunctions. *Lopez v. Heckler,* 713 F.2d 1432, 1435 (9th Cir. 1983). Of the four factors, the first two are "the most critical." *Nken v. Holder,* 556 U.S. 418, 434 (2009).

The merits and irreparable-harm prongs create "a continuum: the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor." *Southwest Voter Registration Educ. Project v. Shelley,* 344 F.3d 914, 918 (9th Cir. 2003). The movant must make a substantial showing on each factor independently. "It is not enough that the chance of success on the merits be 'better than negligible.'" *Nken,* 556 U.S. at 434, *quoting Sofinet v. INS,* 188 F.3d 703, 707 (7th Cir. 1999). Likewise, the mere "'possibility of irreparable injury' fails to satisfy the second factor." *Id., quoting Abbassi v. INS,* 143 F.3d 513, 514 (9th Cir. 1998); *see also Winter v. Natural Resources Defense Council Inc.,* 555 U.S. 7, 22 (2008) (movant must "demonstrate that irreparable injury is *likely* in the absence of an injunction" (emphasis in original)).

A movant who is unable to show a strong likelihood of success on the merits may yet deserve injunctive relief if the case raises "serious questions going to the merits . . . and the balance of hardships tips sharply in [movant's] favor." *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011), *quoting Clear Channel Outdoor, Inc. v. City of Los Angeles,* 340 F.3d 810, 813 (9th Cir. 2003). "Serious questions" are questions that "cannot be resolved one way or the other at the hearing on the injunction and as to which the court perceives a need to preserve the status quo lest one side prevent resolution of the questions . . . by altering the status quo." *Gilder v. PGA Tour, Inc.,* 936 F.2d 417, 422 (9th Cir. 1991), *quoting Republic of the Philippines v. Marcos,* 862 F.2d 1355, 1362 (9th Cir. 1988) (en banc). Serious questions are

"substantial, difficult and doubtful"; while they "need not promise a certainty of success, nor even present a probability of success, [they] must involve a fair chance of success on the merits." *Id.* (internal quotation marks and citations omitted).

### III.   ANALYSIS

A.   <u>Defendants Have Not Shown a Strong Likelihood of Success on the Merits or the Existence of Serious Questions Going to the Merits.</u>

On the merits, Defendants do no more than rehash the summary-judgment arguments that the Court has already rejected. Because they have not provided any reason for the Court to change its view, they have failed to make a strong showing that their appeal is likely to succeed on the merits. *Cf. Alliance for the Wild Rockies v. Kruger,* __ F. Supp. 2d __, 2014 WL 3865936, *8 (D. Mont. 2014); *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC,* __ F. Supp. 2d __, 2014 WL 1199591, *2 (D. Nev. 2014); *United States v. Judicial Watch, Inc.,* 241 F. Supp. 2d 15, 16 (D.D.C. 2003).

Nor does the Court find that the appeal raises serious questions going to the merits. In making this determination, the Court is mindful of the danger that an overly rigid application of the "serious questions" test in motions for an injunction pending appeal could place the movant in a Catch 22. After losing on the merits, movants must go back to the same district court that already ruled against them and ask it to conclude it was probably mistaken. *Protect Our Water v. Flowers,* 377 F. Supp. 2d 882, 884 (E.D. Cal. 2004). At this stage, then, the "serious questions" test may be viewed as fairly contemplating "that tribunals may properly stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained." *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 844–45 (D.C. Cir. 1977). Equitable relief pending appeal may issue "where the trial court is charting new and unexplored ground and the court

determines that a novel interpretation of the law may succumb to appellate review." *Stop H-3 Ass'n v. Volpe,* 353 F. Supp. 14, 16 (D. Hawaii 1972).

The Court's finding that the challenged Commonwealth voting laws violate the Fourteenth and Fifteenth Amendments did not break new ground or require a novel interpretation of the law. As explained in the MDO, *Rice v. Cayetano,* 528 U.S. 495 (2000), nearly compels the conclusion that the Commonwealth's laws restricting the right to vote on Article XII initiatives to NMDs are unconstitutional. This is not to say that Defendants' arguments have no substance, or that their attempt to distinguish this case meaningfully from *Rice* has no prospect of succeeding on appeal. But the obstacles to proving that the Commonwealth laws offend neither the Fifteenth Amendment's right to vote nor the Fourteenth Amendment's guarantee of due process are high. Defendants' prospects of a successful appeal are speculative at best, and not so substantial that the Court perceives a need to preserve a status quo that strips some otherwise qualified voters of the right to vote on issues of general public concern.

The Commonwealth asserts that the bare fact that this case implicates core provisions of the Covenant[1] and "the Commonwealth's unique position within the United States" raises serious questions. (Motion 7.) There is no *per se* rule that when a case calls for interpretation of the Covenant, the questions it raises are serious. Certainly, the subject matter of this litigation involves significant public-policy issues, and the outcome has real consequences for Commonwealth voters. Yet in the interpretation of the Covenant, as in the interpretation of any statute, treaty, or constitution, some legal questions are "substantial, difficult and doubtful," and others are not. In the MDO, the Court did not employ novel methods of reading Covenant

---

[1] Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America ("Covenant"). Proclamation No. 4534, 42 Fed. Reg. 56,593 (Oct. 24, 1977).

provisions; nor did it question the validity of core cases like *Wabol v. Villacrusis,* 958 F.2d 1450 (9th Cir. 1990), that establish the validity of CNMI land-alienation restrictions and of Congress's power to waive application of some federal laws in the Commonwealth. The case does not break new ground on the intersection of the Covenant and the federal Constitution.

For these reasons, the Court finds that Defendants are unlikely to succeed on the merits and have raised no serious questions going to the merits.

B.    The Balance of Equities Do No Tip Sharply in Defendants' Favor.

Having determined that Defendants have not made an adequate showing on the first prong of the test for an injunction, the Court need not balance the equities or compare the hardships involved in granting or denying relief. *Mount Graham Coalition v. Thomas,* 89 F.3d 554, 558 (9th Cir. 1996). But even if there were serious questions, the balance of hardships from either of the proposed injunctions would not tip sharply in Defendants' favor.

In cases involving statewide elections, hardship falls not only on election officials but also on the citizenry. *Southwest Voter Registration,* 344 F.3d at 919. "Interference with impending elections is extraordinary, and interference with an election after voting has begun is unprecedented." *Id.* (internal citation omitted). The early-voting period for the November 4 election has already begun for residents of the Northern Islands. *See* 1 CMC (N. Mar. I. Code) § 6222 ("early voting for the Northern Islands begins on the 46th day preceding the election"). For the vast majority of CNMI voters (residents of Rota, Saipan, and Tinian), it is literally the eve of the election period, which commences on October 28, the seventh day preceding the election. *Id.;* Declaration of Robert A. Guerrero ¶ 3, ECF No. 26-2; *see also* CEC News, Important Dates for the Upcoming 2014 General Election, *available at* http://www.votecnmi.gov.mp/important-dates. Any proposal to interfere with the normal electoral process must, at this late date, be

regarded with extreme caution.

Defendants assert that the Commonwealth would suffer irreparable harm if the election results are certified and the Ninth Circuit later determines that non-NMDs had no right to vote on L.I. 18-1. (Motion 13.) The harm would be irreparable, according to them, because the injury would be intangible and would lack an adequate legal remedy. *See Arizona Dream Act Coalition v. Brewer,* 757 F.3d 1053, 1068 (9th Cir. 2014). The mere possibility of irreparable harm, however, is not in itself sufficient to justify an injunction. "Under *Winter* [*v. Natural Resources Defense Council,* 555 U.S. 7 (2008)], plaintiffs must establish that irreparable harm is *likely,* not just possible," in order to obtain an injunction. *Alliance for the Wild Rockies,* 632 F.3d at 1131 (emphasis in original).

Defendants argue that irreparable harm is likely because (1) a victory on the merits in the Ninth Circuit would nullify the election results ("Proponents and opponents alike will suffer in that their certified vote will be reversed"), and (2) if L.I. 18-1 passes and goes into effect, the validity of any land transactions based on the lower blood quantum during the pendency of the appeal would be called into question and mired in litigation. (Motion 13–14.)

The first alleged harm is minimal. A victory for the Commonwealth on appeal would essentially turn the initiative into a nonbinding referendum.[2] It does the Commonwealth no apparent injury to know how all its qualified voters would have liked the outcome of the

---

[2] This conclusion assumes that if the Ninth Circuit validates the CNMI's voting restrictions against non-NMDs, the Commonwealth will decertify the election result. Generally, the mere fact of irregularities in a state election does not dictate that a federal court will impose the "[d]rastic, if not staggering" remedy of setting aside the outcome. *See Bell v. Southwell,* 376 F.2d 659, 662 (5th Cir. 1967) ("not every unconstitutional racial discrimination necessarily permits or requires a retrospective voiding of the election"); *see also Southwest Voter Registration,* 344 F.3d at 918 ("The decision to enjoin an impending election is so serious that the Supreme Court has allowed elections to go forward even in the face of an undisputed constitutional violation."). Moreover, it is not clear that a federal court would have the power to tell a state (or the Commonwealth) to decertify the result of an initiative to change *state* law when the voting procedure did not violate any *federal* law.

initiative ballot to be. And because NMD voters will not be given a different ballot from non-NMD voters, the vote totals will not show what effect (if any) the participation of non-NMDs had on the result. Even assuming the MDO is overturned, there is still no assurance that the outcome of a special election, in which only NMD voters participate, would be different. Moreover, an injunction would not, at this late date, save the Commonwealth much money. The ballots have already been printed up and the tabulation system has been programmed to count the ballots. As this is a general election for many public offices, the Commonwealth will expend resources to hold the election, count the ballots, and certify the results regardless of whether the tabulation is postponed for this one initiative.

The second alleged harm is more substantial. If L.I. 18-1 passes, it will go into effect immediately. *See* N. Mar. I. Const., art. XVIII, sec. 5(b). Persons with only "some degree" of "Northern Marianas Chamorro or Carolinian blood" – the present quantum is one-quarter – will become NMDs. Defendants anticipate that the Commonwealth Department of Public Lands will be inundated with applications for homesteads by new NMDs. Also, L.I. 18-1 requires new claimants to NMD status to prove their claims in the Commonwealth Superior Court. Defendants foresee that such litigation will clog the courts. Also, the validity of any land transactions in fee simple that take place during the pendency of the appeal which involve buyers with less than a one-quarter blood quantum may be subject to dispute. Plaintiff suggests that these harms could be mitigated by the Commonwealth itself. (Opp'n 13.) The Superior Court could stay all proceedings regarding NMD claims, and the Commonwealth could suspend processing new homestead claims. (*Id.*) At the hearing, defense counsel denied this was possible. This Court declines to opine on what the Commonwealth courts could or should do, and whether the Commonwealth executive should forebear from enforcing a law.

However, it must be borne in mind that the harms to Defendant are speculative. They will occur only if three things occur: first, L.I. 18-1 passes; second, Defendants win their appeal; and third, a special election results in a defeat of the initiative. If the initiative does not pass this November 4th, Defendants suffer none of the anticipated injury. If the initiative passes and Defendants fail on appeal, they suffer no injury. If the initiative passes, Defendants prevail on appeal, and a special election results in the passage of the initiative, they suffer no injury. "Speculative injury does not constitute irreparable harm." *Goldie's Bookstore, Inc. v. Superior Court of State of Cal.,* 739 F.2d 466, 472 (9th Cir. 1984).

On the other side of the balance, the harm to the voters from an indefinite postponement of the vote count is substantial. The right to vote means the right to have one's vote counted. "We regard it as equally unquestionable that the right to have one's vote counted is as open to protection by Congress as the right to put a ballot in a box." *United States v. Mosely,* 238 U.S. 383, 386 (1915). "Obviously included within the right to choose, secured by the Constitution, is the right of qualified voters within a state to cast their ballots and have them counted." *United States v. Classic,* 313 U.S. 299, 315 (1941); *See also* 52 U.S.C. § 10101(e) (defining "vote" in Civil Rights Act of 1960 as including "casting a ballot, and having such ballot counted and included in the appropriate total of votes cast with respect to . . . propositions for which votes are received in an election").

Elections create "expectation interests that cannot lightly be discounted." *Lopez v. Hale,* 797 F. Supp. 547, 550 (N.D. Tex. 1992). Delay in the certification of election results "interferes with voters' expectations and the orderly conduct of public elections." *Lopez v. Merced County, Cal.,* 473 F. Supp. 2d 1072, 1082 (E.D. Cal. 2007). Public announcement of an unusual injunction that would allow a vote on the initiative but stall the counting and certification runs

the risk of confusing voters and suppressing turnout.

In the case of *Lopez v. Merced County, Cal.*, Hispanic residents challenged numerous changes to municipal boundaries that allegedly affected voting of a language minority group. 473 F. Supp. 2d 1072, 1074 (E.D. Cal. 2007). Shortly before an election, they sued the municipalities under the Voting Rights Act of 1965 and sought to enjoin the certification of election results until the Attorney General of the United States precleared the voting changes, as then required by Section 5. *Id.* Plaintiffs knew they had a claim more than two months before they filed suit, but for various reasons delayed until the election was only 11 days away. *Id.* at 1077.

The three-judge district court panel in *Lopez* denied an injunction to postpone certification. The panel found that the balance of hardships tipped in favor of the opposing party. *Id.* at 1081. It valued the "justified expectations" of the municipal voters "that their votes would be counted in important and highly disputed local elections." *Id.* The panel observed that the timing of the injunction request, shortly before the election and the required state-law certification of the results, upset voters' expectations of an orderly election. *Lopez v. Merced County,* 473 F. Supp. 2d at 1082.

Likewise, the injunction proposed by Defendants risks undermining public "[c]onfidence in the integrity of our electoral processes[.]"*Purcell v. Gonzalez,* 549 U.S. 1, 4 (2006) (per curiam). Executive Director Guerrero testified, consistent with his sworn declaration, that if the injunction is granted, the Commonwealth will code the tabulating machines in such a manner as to skip L.I. 18-1. (Guerrero Declaration ¶ 4(b).) It would then store the ballots "in the same fashion that they are stored during early voting until the appeal is decided." (*Id.* ¶ 3.) It is likely to be a long time before the appeal is decided. The briefing will not be completed until weeks

after the election. *See* Briefing Schedule, *Davis v. Commw. Election Comm'n,* No. 14-16090 (9th Cir.), Dkt. No. 7. Oral argument could be months from now. In the meantime, voter confidence in the initiative election will be strained. Prolonged withholding of the vote count and certification will encourage allegations of mishandling of the ballots and even outright vote fraud. "Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy. Voter fraud drives honest citizens out of the democratic process and breeds distrust of our government." *Purcell,* 549 U.S. at 4.

In state election cases, because the hardship falls on all the state's voters, "[t]he public interest is significantly affected." *Southwest Voter Registration,* 344 F.3d at 919. "The strong public interest in having elections go forward . . . weighs heavily against an injunction that would delay an upcoming election." *Cardona v. Oakland Unified School Dist.,* 785 F. Supp. 837, 842 (N.D. Cal. 1992). To hold an election but stop the vote count in its tracks effectively delays the election. With early voting having started and Election Day only a week away, the public interest clearly lies in having the votes counted.

It didn't have to be this way. Right after filing their notice of appeal in June, Defendants could have moved for the Ninth Circuit to expedite the briefing so as to have a decision before the November election. Good cause to grant a motion to expedite includes the situation where, "in the absence of expedited treatment, irreparable harm may occur or the appeal may become moot." Circuit Rule 27-12. Motions to expedite are sometimes granted when the outcome of an appeal could have an effect on upcoming Election Day procedures. *See Daily Herald Co., v. Munro,* 758 F.2d 350 (9th Cir. 1984); *PG Publ'g Co. v. Aichele,* 705 F.3d 91 (3d Cir. 2013). At the hearing, Defendants admitted that they did not so move and did not otherwise seek relief from a briefing schedule that runs past the November election. For this reason alone, a degree of

responsibility for the predicament that Defendants are in must fall on them. *See Papkosmas v. Papkosmas,* 483 F.3d 617, 621 n.2 (9th Cir. 2007).

Defendants' months-long delay in moving for injunctive relief from the MDO is also a factor for the Court to consider. Because an injunction is an equitable remedy, "traditional equitable considerations such as laches, duress and unclean hands may militate against issuing an injunction that otherwise meets [the] requirements." *Institute of Cetacean Research v. Sea Shepherd Conservation Soc.,* 725 F.3d 940, 947 (9th Cir. 2013). Laches is an equitable doctrine that prevents a party who, "with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights." *Evergreen Safety Council v. RSA Network Inc.,* 697 F.3d 1221, 1226 (9th Cir. 2012). Defendants have not adequately explained why they waited nearly five months to seek relief from the effects of the MDO on the November election. As early as March, they knew that L.I. 18-1 would be put before the voters no later than the next general election in November. (*See* Defendants' Cross Motion for Summary Judgment, Statement of Undisputed Facts, Mar. 20, 2014, ECF No. 10.) If Defendants had moved for relief promptly after the MDO issued, voters' expectation interest in deciding the initiative would have been substantially less than it is on the eve of the election.

For these reasons, the Court finds that the balance of hardships does not tip sharply in Defendants' favor. The harm to Defendants is too speculative even to support an injunction to prohibit enforcement of the initiative in the event it passes. Even if the appeal of the MDO raised serious questions going to the merits, the Court would deny the relief that the Defendants have proposed.

//

//

## IV.   CONCLUSION

Based on the foregoing, the Motion for Sequestration of Ballots Pending Appeal is DENIED.

SO ORDERED this 27th day of October, 2014.

_____
RAMONA V. MANGLONA
Chief Judge