**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOHN H. DAVIS, JR., *Plaintiff-Appellee*, v. COMMONWEALTH ELECTION COMMISSION; FRANCES M. SABLAN, Chairperson of Commonwealth Election Commission; ROBERT A. GUERRERO, Executive Director of Commonwealth Election Commission; ELOY S. INOS, Governor of the Commonwealth of the Northern Mariana Islands, *Defendants-Appellants.* | No. 14-16090 D.C. No. 1:14-cv-00002 OPINION |

Appeal from the United States District Court
for the District of the Northern Mariana Islands
Ramona V. Manglona, Chief Judge, Presiding

Argued and Submitted June 21, 2016
San Francisco, California

Filed December 27, 2016

Before: Sidney R. Thomas, Chief Judge, and Consuelo M.
Callahan and Mary H. Murguia, Circuit Judges.

Opinion by Chief Judge Thomas

2      DAVIS V. COMMONWEALTH ELECTION COMM'N

## SUMMARY[*]

## Civil Rights

The panel affirmed the district court's order on summary judgment  granting declaratory and injunctive relief to plaintiff, who alleged that Article XVIII, section 5(c) of the Commonwealth of Northern Mariana Islands Constitution – which restricts voting in certain elections to individuals of Northern Mariana Islands descent – unconstitutionally limits voting on the basis of race.

The panel noted that the voting restriction in Article XVIII, section 5(c) would divide the citizenry of the Commonwealth between Northern Mariana Descent and non-Northern Mariana Descent when voting on amendments to a property restriction that affects everyone.  The panel determined that the Fifteenth Amendment aims to prevent precisely this sort of division in voting.  The panel held that the voter restriction in Article XVIII, section 5(c) is race-based and therefore violates the Fifteenth Amendment.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

(3 of 22)

Case 1:14-cv-00002 Document 30 Filed 12/28/16 Page 3 of 22
Case 14-16090, 12/07/2016, ID: 10246231, DktEntry: 64-1, Page 3 of 17

DAVIS V. COMMONWEALTH ELECTION COMM'N      3

**COUNSEL**

Charles Edmond Brasington (argued), Assistant Attorney General, Office of the Attorney General, Saipan, Commonwealth of the Northern Mariana Islands, for Defendants-Appellants.

Jeanne H. Rayphand (argued), Saipan, Commonwealth of the Northern Mariana Islands, for Plaintiff-Appellee.

Joseph Horey (argued), O'Connor Berman Dotts & Banes, Saipan, Commonwealth of the Northern Mariana Islands, for Amicus Curiae Northern Marianas Descent Corporation.

---

**OPINION**

THOMAS, Chief Circuit Judge:

The Commonwealth of the Northern Mariana Islands restricts voting in certain elections to individuals of "Northern Marianas descent." This appeal presents the question of whether this restriction is race-based and violates the Fifteenth Amendment of the Constitution of the United States. We conclude that it does, and we affirm the judgment of the district court.

I

Under the terms of a Covenant agreement entered in 1975, the Northern Mariana Islands ("CNMI" or "Commonwealth") was established as a "self-governing commonwealth . . . in political union with and under the sovereignty of the United States of America." Covenant to

Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States ("Covenant") § 101.[1]  In ten articles, the Covenant "detail[s] the political relationship between the United States and the CNMI."  *N. Mariana Islands v. United States*, 399 F.3d 1057, 1059 (9th Cir. 2005).  Article I provides that the "Covenant . . . together with those provisions of the Constitution, treaties and laws of the United States applicable to the Northern Mariana Islands, will be the supreme law of the Northern Mariana Islands."  Covenant § 102.  The Fifteenth Amendment to the Constitution of the United States, which prohibits race-based voting deprivations, is one of those provisions "applicable within the Northern Mariana Islands as if the Northern Mariana Islands were one of the several states."  Covenant § 501(a) (listing the Fifteenth Amendment).

The CNMI Constitution establishes eligibility qualifications for voting in the Commonwealth, a right which includes the ability to participate in ratifying proposed constitutional amendments.  *See* Covenant § 201 ("The people of the Northern Mariana Islands will formulate and approve a Constitution and may amend their Constitution pursuant to the procedures provided therein."); CNMI Const. art. VII, § 1, art. XVIII, § 5.  Article VII defines the term voters and Article XVIII governs the amendment process.  In

---

[1] For additional background on the historical relationship between the CNMI and the United States, *see N. Mariana Islands v. United States*, 399 F.3d 1057, 1059 (9th Cir. 2005); *Magana v. Com. of the N. Mariana Islands*, 107 F.3d 1436, 1439 (9th Cir. 1997), *as amended* (May 1, 1997); *Wabol v. Villacrusis*, 958 F.2d 1450, 1458 (9th Cir. 1990).

Case 1:14-cv-00002 Document 30-2 Filed 12/28/16 Page 5 of 22
Case 4:16-cv-00002, Doc. 103462, DktEntry 164-1, Page 5 of 17
(5 of 22)

general, proposed amendments must be submitted to voters,[2] "for ratification at the next regular general election or at a special election established by law." CNMI Const. art. XVIII, § 5(a). In 1999, however, an amendment to Article XVIII, section 5 specifically redefined the term "voters" when the proposed amendment intends to alter Article XII, which governs restrictions on the alienation of land in the Commonwealth. CNMI Const. art. XVIII, § 5(c); *see* Pub. L. No. 17–40, § 1.

This new text—codified as Article XVIII, section 5(c)—provided:

> In the case of a proposed amendment to Article XII of this Constitution, the word "voters" as used in subsection 5(a) above shall be limited to eligible voters under Article VII who are also persons of Northern Marianas descent as described in Article XII, Section 4, and the term "votes cast" as used in subsection 5(b) shall mean the votes cast by such voters.

---

[2] Generally, a qualified voter is one

> who, on the date of the election, is eighteen years of age or older, is domiciled in the Commonwealth, is a resident of the Commonwealth and has resided in the Commonwealth for a period of time provided by law, is not serving a sentence for a felony, has not been found by a court to be of unsound mind, and is either a citizen or national of the United States.

CNMI Const. art. VII, § 1.

(6 of 22)

Case 1:14-cv-00002 Document 30 Filed 12/28/16 Page 6 of 22
Case 14-16090, 12/27/2016, ID: 10246251, DktEntry: 6-1, Page 6 of 17

6        DAVIS V. COMMONWEALTH ELECTION COMM'N

Article XII restricts the "acquisition of permanent and long-term interests in real property within the Commonwealth . . . to persons of Northern Marianas descent."[3]  As defined in Article XII, section 4, a "person of Northern Marianas descent" ("NMD") is

> a person who is a citizen or national of the United States and who is of at least one-quarter Northern Marianas Chamorro or Northern Marianas Carolinian blood or a combination thereof or an adopted child of a person of Northern Marianas descent if adopted while under the age of eighteen years. For purposes of determining Northern Marianas descent, a person shall be considered to be a full-blooded Northern Marianas Chamorro or Northern Marianas Carolinian if that person was born or domiciled in the Northern Mariana Islands by 1950 and was a citizen of the Trust Territory of the Pacific Islands before the termination of the Trusteeship with respect to the Commonwealth.

There is no dispute that Article XVIII, section 5(c) denies otherwise eligible non-NMD voters the right to vote on any constitutional amendment affecting Article XII land alienation restrictions.

---

[3] This language implements Covenant section 805, which permits the Commonwealth to limit fee simple land ownership to "persons of Northern Marianas descent."

To enforce section 5(c), the Commonwealth legislature passed House Bill 17–57, which was signed into law on April 21, 2011.  The new Public Law No. 17–40 established a Northern Marianas Descent Registry ("NMDR") within the Commonwealth Election Commission ("Commission") and mandated the production of an Official Northern Marianas Descent Identification Card to "be issued only to persons who are qualified pursuant to Article XII, § 4 of the Northern Mariana Islands Constitution."  Pub. L. No. 17–40 § 2.  No one could vote in an Article XII election without this identification card.  *Id.* § 2(c)(4).

Plaintiff John Davis is a qualified voter in the Commonwealth under Article VII, section 1, but he does not meet the definition of NMD in Article XII, section 4.  Davis brought suit against the Commission, its chairperson and executive director, and the Governor of the Commonwealth seeking declaratory and injunctive relief under the Fourteenth and Fifteenth Amendments.[4]  He alleges that Article XVIII,

---

[4] Davis was not required to use the "statutory vehicle" of 42 U.S.C. § 1983 to bring his Fifteenth Amendment claim seeking declaratory and injunctive relief.  *Allen v. State Bd. of Elections*, 393 U.S. 544, 556 n.21 (1969) ("Of course the private litigant could always bring suit under the Fifteenth Amendment."); *Terry v. Adams*, 345 U.S. 461, 490 (1953) (noting that the Fifteenth Amendment is "self-executing"); *see Armstrong v. Exceptional Child Care Center, Inc.*, 135 S. Ct. 1378, 1384 (2015) ("The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England.").  The Commission was a proper party for Davis's action because it does not enjoy Eleventh Amendment immunity.  *See* 13 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3524.2 (3d ed. 2008) (noting that subject matter jurisdiction for an *Ex Parte Young* action obtains when the entity does not enjoy Eleventh Amendment immunity).  Because Davis's Fifteenth Amendment claim is dispositive in this case,

8        DAVIS V. COMMONWEALTH ELECTION COMM'N

section 5(c) and Public Law 17–40 unconstitutionally limit
voting on the basis of race.  He brought four additional
claims: (1) a claim under § 1(a) of the Voting Rights Act,
52 U.S.C. § 10101 et seq., (2) a claim under § 1(a)(2) of the
Voting Rights Act, (3) a taxpayer action under the
Commonwealth Constitution, and (4) a claim under 42 U.S.C.
§ 1983 against the senior officers of the Commission.

Davis asked the court to enjoin enforcement of Article
XVIII, section 5(c) and its implementing statute so that he
could participate in a November 2014 special election to
consider a proposed change to the definition of NMD in
Article XII.  On cross motions for summary judgment, the
district court granted Davis declaratory and injunctive relief
and required that non-NMDs be permitted to vote in the
November 2014 special election.  The district court also
dismissed the Governor as a party and dismissed Davis's
Voting Rights Act § 1(a)(2) and taxpayer claims.

This timely appeal followed.  During its pendency, the
Commonwealth sought to enjoin counting the ballots cast in
the November 2014 special election.  We denied the request
pending presentation of the motion to the district court.  The
district court did not grant the injunction.

The election was held on November 4, 2014.  With both
NMDs and non-NMDs eligible to vote, a majority of
Commonwealth voters ratified Legislative Initiative 18-1.
Legislative Initiative 18-1 amended the definition of NMD in
Article XII, section 4 by altering the required amount of
"Northern Marianas Chamorro or Northern Marianas

we do not reach whether he was required to use 42 U.S.C. § 1983 to assert
his Fourteenth Amendment claims.

DAVIS V. COMMONWEALTH ELECTION COMM'N 9

Carolinian blood" to qualify as an NMD from "one quarter" to "some." It also removed NMD status from adopted children who would not otherwise qualify as NMDs, and it established a court procedure for people with less than "one quarter Northern Marianas Chamorro or Northern Marianas Carolinian blood" to attain legal NMD status.

We review a district court's decision on cross motions for summary judgment *de novo*. *Guatay Christian Fellowship v. Cty. of San Diego*, 670 F.3d 957, 970 (9th Cir. 2011).

II

Article XVIII, section 5(c) relies on ancestral distinctions to limit voting in a territory-wide election in the Commonwealth. It therefore violates the Fifteenth Amendment of the Constitution of the United States. The restriction is invalid and may not be enforced. Our analysis is controlled by the Supreme Court's decision in *Rice v. Cayetano*, 528 U.S. 495 (2000).

A

The Fifteenth Amendment establishes that "[t]he right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude." As noted, there is no doubt that the Fifteenth Amendment applies in the Commonwealth. Covenant § 501(a) (enumerating the Fifteenth Amendment among the Constitutional provisions "applicable within the Northern Mariana Islands as if the Northern Mariana Islands were one of the several states."); *see id.* at § 102 ("[T]he Constitution, treaties and laws of the

(10 of 22)

Case 1:16-cv-00002 Document 30-6 Filed 12/28/16 Page 10 of 22
Case: 16-16959, 12/27/2016, ID: 10246251, DktEntry: 44-3, Page 12 of 17

United States applicable to the Northern Mariana Islands, will be the supreme law of the Northern Mariana Islands").

Under the Fifteenth Amendment, "[a]ncestry can be a proxy for race." *Rice*, 528 U.S. at 514. This is because "[a]ncestral tracing . . . achieves its purpose by creating a legal category which employs the same mechanisms, and causes the same injuries, as laws or statutes that use race by name." *Id.* at 517. Thus, an ancestry-based "electoral restriction [may] enact[] a race-based voting qualification" and contravene the Fifteenth Amendment. *Id.*

Article XVIII, section 5(c) of the CNMI Constitution restricts who is eligible to vote on amendments to the Commonwealth's land ownership restriction to "persons of Northern Marianas descent as described in Article XII, Section 4." There is no dispute that this definition of NMD is primarily ancestral. This case requires us to decide whether section 4's ancestral distinction is a proxy for race.

We have answered this question previously, in the context of upholding the constitutionality of section 805 of the Covenant and its implementation in Article XII, section 4. *Wabol*, 958 F.2d at 1451. There, we observed that the definition of "NMD" in Article XII, section 4 is a "race-based restriction[]." *Id.* The facts of this case do not persuade us to abandon our previous view: Article XII, section 4 is a "race-based" definition.

In *Rice*, the Supreme Court addressed an ancestral voting restriction in elections for the trustees of a state agency that administered programs to benefit native Hawaiians. 528 U.S. at 498–99. The Hawaii Constitution limited voting for the trustees to "qualified voters who are Hawaiians, as provided

DAVIS V. COMMONWEALTH ELECTION COMM'N      11

by law." Haw. Const. art. XII, § 5; *accord Rice*, 528 U.S. at 509. The statute at issue in *Rice* defined Hawaiian as "any descendant of the aboriginal peoples inhabiting the Hawaiian Islands which exercised sovereignty and subsisted in the Hawaiian Islands in 1778, and which peoples thereafter have continued to reside in Hawaii." *Id.* at 509. The same statute also defined "native Hawaiian" as follows:

> 'Native Hawaiian' means any descendant of not less than one-half part of the races inhabiting the Hawaiian Islands previous to 1778, as defined by the Hawaiian Homes Commission Act, 1920, as amended; provided that the term identically refers to the descendants of such blood quantum of such aboriginal peoples which exercised sovereignty and subsisted in the Hawaiian Islands in 1778 and which peoples thereafter continued to reside in Hawaii.

*Id.* at 510.

Hawaii defended the statute against a Fifteenth Amendment challenge on the ground that it was "ancestral," rather than racial. The Supreme Court rejected this distinction, noting that "[t]he Fifteenth Amendment was quite sufficient to invalidate a scheme which did not mention race but instead used ancestry in an attempt to confine and restrict the voting franchise." *Rice*, 528 U.S. at 513 (citing *Guinn v. United States*, 238 U.S. 347 (1915)). "Ancestry can be a proxy for race," the Court held. *Rice*, 528 U.S. at 514. "It is that proxy here." *Id*. The voting restriction was invalidated.

(12 of 22)

Case 1:14-cv-00002/2016-12-28 Document 30-2 Filed 12/28/16 Entry ID: 6064425 Page 12 of 22
Case 1:16-cv-02027/2016-12-28 Document 103-2 Filed 12/28/16 Entry ID: 6064425 Page 12 of 17

12      DAVIS V. COMMONWEALTH ELECTION COMM'N

Just as the definitions of Hawaiian and native Hawaiian in the *Rice* statute referred to specific ethnic or aboriginal groups, the definition of NMD in Article XII, section 4, ties voter eligibility to descent from an ethnic group.  *Id.* at 509–10; *Davis v. Commonwealth Election Comm'n*, No. 1-14-CV-00002, 2014 WL 2111065, at *15 (D. N. Mar. I. May 20, 2014) ("It was the drafters of the Commonwealth Constitution who chose to tie NMD status to a blood relationship to the two ethnicities.").  Similarly, the Hawaii Constitution referenced blood quantum to determine descent, while Article XII, section 4 of the CNMI Constitution refers to "some degree of Northern Marianas Chamorro or Northern Marianas Carolinian blood" to prove NMD status.  The Commonwealth's definition of NMD does not use the word race, but Public Law 17–40, the implementing statute, does.  P.L. 17–40 § 2(c)(5) (requiring public records identifying a voter applicant's "nationality and race" to determine NMD status).  Substituting "peoples" for "race" did not make the ancestral voting restriction in *Rice* constitutional under the Fifteenth Amendment.  *See* 528 U.S. at 516.  Neither can it here.  Article XII, section 4 of the Commonwealth Constitution contains a race-based definition of NMD.  By restricting voting on the basis of this definition, Article XVIII, section 5(c) enacts a race-based restriction on voting.  Article XVIII, section 5(c) thus violates the Fifteenth Amendment.  The district court was correct to enjoin its enforcement.

B

Contrary to the assertions of the Commonwealth, this case cannot be distinguished from *Rice*.

First, the Commonwealth argues that the definition of a person of Northern Marianas descent is not race-based because it relies on "race-neutral criteria." To qualify as a "full blooded" NMD under Article XII, section 4, one must: (1) have been "born or domiciled in the Northern Mariana Islands by 1950"; and (2) have been "a citizen of the Trust Territory of the Pacific Islands before the termination of the Trusteeship with respect to the Commonwealth." CNMI Const. art. XII, § 4. While there is historical evidence that some persons who were not of Chamorro or Carolinian ancestry lived on the islands in 1950, *Rice* forecloses this argument. The Fifteenth Amendment will not tolerate a voter restriction "which singles out 'identifiable classes of persons . . . solely because of their ancestry or ethnic characteristics.'" *Rice*, 528 U.S. at 515 (quoting *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987)). Tethering NMD status to an ancestor's residence in the islands in 1950 also does not distinguish this case from *Rice* because the stated intent of the provision is to make ethnic distinctions. *Rice* rejected the argument that because classification was "based simply on the date of an ancestor's residence in Hawaii," it did not violate the Fifteenth Amendment. *Id.* at 516. The Court held that this was "insufficient to prove the classification is nonracial in purpose and operation." *Id.* Here, as in *Rice*, that "argument is undermined by [the restriction's] express racial purpose and by its actual effects." *Id.* at 517. References to the Chamorro and Carolinian peoples are unambiguous and sit at the heart of the provision. Thus, the date's inclusion in the NMD definition does not lessen its racial intent or effect or otherwise render it "race-neutral." Finally, the Commonwealth contends that section 4's adoption provision renders the definition race-neutral. That adopted children might attain NMD status does not make the core restriction any less about ancestry. An overtly race-

based voting restriction would never survive Fifteenth Amendment scrutiny simply by allowing adopted children of eligible voters a means of becoming members of the voting-eligible race. The nature of the restriction remains identical: voters are made eligible by their race affiliation. What would there persist as a racial restriction in this case persists as an ancestral restriction. Thus, notwithstanding the adoption provision, Article XII, section 4 is about ancestry.

Second, the Court in *Rice* rejected the claim that "Hawaiian" and "native Hawaiian" are political classifications, like membership in a federally recognized American Indian Tribe. The Supreme Court has held that membership in a federally recognized American Indian tribe is a political—not racial—classification. *Rice*, 528 U.S. at 519–20 (describing the holding in *Morton v. Mancari*, 417 U.S. 535 (1974)). This is because recognized American Indian tribes are "quasi-sovereign" entities with wide latitude to organize their internal affairs. *Id.* at 520. The *Rice* Court held that the people of Hawaiian and Native Hawaiian descent were not a quasi-sovereign group distinct from the whole citizenry of the state and could not restrict voter eligibility in a statewide election only to themselves. *Rice*, 528 U.S. at 518. Unlike a tribal election affecting internal affairs of a quasi-sovereign entity, the election in question affected the affairs of the State of Hawaii. The same principles apply with greater force in this case. Elections in which only NMDs may vote affect the affairs of the entire Commonwealth, "not of a separate quasi sovereign." *Id.* at 522. The Commonwealth is subject to the sovereignty of the United States. Covenant § 101; *see also N. Mariana Islands*, 399 F.3d at 1062. Given that persons of Northern Marianas descent have not been recognized as having a political identification that is "quasi-sovereign" or otherwise distinct

DAVIS V. COMMONWEALTH ELECTION COMM'N     15

from the Commonwealth citizenry as a whole, cases applying to recognized American Indian tribes do not apply.

Third, *Rice* also bars the argument that constitutional scrutiny does not obtain because NMDs have a greater or more specialized interest in Article XII's land alienation restrictions. The *Rice* Court rejected Hawaii's defense that the voting restriction "does no more than ensure an alignment of interests between the fiduciaries and beneficiaries of a trust." 528 U.S. at 523. That position, the Court held,

> rests, in the end, on the demeaning premise
> that citizens of a particular race are somehow
> more qualified than others to vote on certain
> matters. . . . Under the Fifteenth Amendment
> voters are treated not as members of a distinct
> race but as members of the whole citizenry.

*Id.* The voting restriction in Article XVIII, section 5(c) would divide the citizenry of the Commonwealth between NMDs and non-NMDs when voting on amendments to a property restriction that affects everyone. The Fifteenth Amendment aims to prevent precisely this sort of division in voting.[5]

---

[5] We do not reach the Commonwealth's argument that a lack of discriminatory intent should save the restriction. We analyze discriminatory intent when a restriction is race-neutral on its face; the restriction here is not. *See City of Mobile, Ala. v. Bolden*, 446 U.S. 55, 62 (1980).

(16 of 22)

Case 1:14-cv-00002/Document 30 Filed 12/28/16 Page 16 of 22
Case: 16-16904, 12/27/2016, ID: 10246251, DktEntry: 44-1, Page 16 of 17

## C

We also reject the remaining arguments for the voter restriction advanced by *amici*. First, the voter restriction at issue here is not an implementation of section 805 of the Covenant. We upheld the constitutionality of section 805's land ownership restriction in *Wabol*. 958 F.2d at 1459–60 (United States may limit the application of federal law to Covenant section 805 and its implementing provision, Commonwealth Constitution Article XII). Article XII implements section 805, and thus it, too, was constitutional under *Wabol*. But limits on who may own land are quite different—conceptually, politically, and legally—than limits on who may vote in elections to amend a constitution.

Second, the *Insular Cases* doctrine does not apply. The *Insular Cases* held that United States Constitution applies in full to "incorporated" territories, but that "[e]lsewhere, absent congressional extension, only 'fundamental' constitutional rights apply in the territory." *Wabol*, 958 F.2d at 1459; *see generally Boumediene v. Bush*, 553 U.S. 723, 756–57 (2008) (discussing *Insular Cases* doctrine). But the Covenant makes the Fifteenth Amendment fully applicable in the Commonwealth. Covenant § 501. Thus, the application of the Fifteenth Amendment is not selective or in any way limited by the Commonwealth's status as an unincorporated territory.

Third, the Commonwealth cannot limit or modify the United States Constitution by adopting inconsistent provisions in its own constitution. Nor would such a modification be consistent with the relationship between the United States Constitution and the Commonwealth Constitution as set forth in the Covenant.

(17 of 22)

Case 1:14-cv-00002 Document 30 Filed 12/28/16 Page 17 of 23
Case: 16-1690, 12/27/2016, ID: 10246251, DktEntry: 44-1, Page 17 of 17

DAVIS V. COMMONWEALTH ELECTION COMM'N     17

In sum, our observation in *Wabol* that Article XII, section 4 makes "race-based" distinctions remains true in the voting context. Because this means that Article XVIII, section 5(c)'s voting restriction relies on race-based distinctions, it violates the Fifteenth Amendment. The district court was correct to grant declaratory and injunctive relief in Davis's favor.

### III

The voter restriction in Article XVIII, section 5(c) is race-based. It therefore violates the Fifteenth Amendment. Because the Fifteenth Amendment controls, we need not—and do not—reach arguments raised by the parties around the Fourteenth Amendment, the Voting Rights Act, and claims brought under 42 U.S.C. § 1983. We affirm the judgment of the district court.

**AFFIRMED**.

(18 of 22)

Case 1:14-cv-00002 Document 30 Filed 12/28/16 Page 18 of 22
Case: 14-16049, 12/27/2016, ID: 10246250, DktEntry: 42-2, Page 18 of 5

## United States Court of Appeals for the Ninth Circuit

### Office of the Clerk
95 Seventh Street
San Francisco, CA 94103

### Information Regarding Judgment and Post-Judgment Proceedings

**Judgment**
- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36.  Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise.  To file a motion to stay the mandate, file it electronically via the appellate ECF system or, if you are a pro se litigant or an attorney with an exemption from using appellate ECF, file one original motion on paper.

**Petition for Panel Rehearing  (Fed. R. App. P. 40; 9th Cir. R. 40-1)**
**Petition for Rehearing En Banc (Fed. R. App. P. 35; 9th Cir. R. 35-1 to -3)**

(1)   A.   **Purpose (Panel Rehearing):**
- A party should seek panel rehearing only if one or more of the following grounds exist:
  - ► A material point of fact or law was overlooked in the decision;
  - ► A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
  - ► An apparent conflict with another decision of the Court was not addressed in the opinion.
- Do not file a petition for panel rehearing merely to reargue the case.

B.   **Purpose (Rehearing En Banc)**
- A party should seek en banc rehearing only if one or more of the following grounds exist:

> ► Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or

> ► The proceeding involves a question of exceptional importance; or

> ► The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2)   Deadlines for Filing:**
- A petition for rehearing may be filed within 14 days after entry of judgment.  Fed. R. App. P. 40(a)(1).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment.  Fed. R. App. P. 40(a)(1).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- *See* Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication.  9th Cir. R. 40-2.

**(3)   Statement of Counsel**
- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist.  The points to be raised must be stated clearly.

**(4)   Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**
- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms.*
- You may file a petition electronically via the appellate ECF system. No paper copies are required unless the Court orders otherwise. If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper. No additional paper copies are required unless the Court orders otherwise.

## Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)
- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms.*

## Attorneys Fees
- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-7806.

## Petition for a Writ of Certiorari
- Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov

## Counsel Listing in Published Opinions
- Please check counsel listing on the attached decision.
- If there are any errors in a published opinion, please send a letter **in writing within 10 days** to:
  - ► Thomson Reuters; 610 Opperman Drive; PO Box 64526; St. Paul, MN 55164-0526 (Attn: Jean Green, Senior Publications Coordinator);
  - ► and electronically file a copy of the letter via the appellate ECF system by using "File Correspondence to Court," or if you are an attorney exempted from using the appellate ECF system, mail the Court one copy of the letter.

**Form 10. Bill of Costs** ................................................................................................................*(Rev. 12-1-09)*

# United States Court of Appeals for the Ninth Circuit

## BILL OF COSTS

This form is available as a fillable version at:
*http://cdn.ca9.uscourts.gov/datastore/uploads/forms/Form%2010%20-%20Bill%20of%20Costs.pdf*.

<u>**Note:**</u> If you wish to file a bill of costs, it MUST be submitted on this form and filed, with proof of service, within 14 days of the date of entry of judgment, and in accordance with 9th Circuit Rule 39-1. A late bill of costs must be accompanied by a motion showing good cause. Please refer to FRAP 39, 28 U.S.C. § 1920, and 9th Circuit Rule 39-1 when preparing your bill of costs.

|                        |      | v. |                    | 9th Cir. No. |            |
|------------------------|------|----|--------------------|--------------|------------|

The Clerk is requested to tax the following costs against: [                    ]

| Cost Taxable under FRAP 39, 28 U.S.C. § 1920, 9th Cir. R. 39-1 | REQUESTED *(Each Column Must Be Completed)* | | | | ALLOWED *(To Be Completed by the Clerk)* | | | |
|---|---|---|---|---|---|---|---|---|
|  | No. of Docs. | Pages per Doc. | Cost per Page* | TOTAL COST | No. of Docs. | Pages per Doc. | Cost per Page* | TOTAL COST |
| **Excerpt of Record** |  |  | $ | $ |  |  | $ | $ |
| **Opening Brief** |  |  | $ | $ |  |  | $ | $ |
| **Answering Brief** |  |  | $ | $ |  |  | $ | $ |
| **Reply Brief** |  |  | $ | $ |  |  | $ | $ |
| **Other\*\*** |  |  | $ | $ |  |  | $ | $ |
|  |  |  | **TOTAL:** | $ |  |  | **TOTAL:** | $ |

\* *Costs per page*: May not exceed .10 or actual cost, whichever is less. 9th Circuit Rule 39-1.

\*\* *Other*: Any other requests must be accompanied by a statement explaining why the item(s) should be taxed pursuant to 9th Circuit Rule 39-1. Additional items without such supporting statements will not be considered.

Attorneys' fees **cannot** be requested on this form.

*Continue to next page*

**Form 10. Bill of Costs -** *Continued*

I, [                    ] , swear under penalty of perjury that the services for which costs are taxed were actually and necessarily performed, and that the requested costs were actually expended as listed.

Signature [                    ]

("s/" plus attorney's name if submitted electronically)

Date [                    ]

Name of Counsel: [                    ]

Attorney for: [                                        ]

---

*(To Be Completed by the Clerk)*

Date [                    ]     Costs are taxed in the amount of $ [                    ]

Clerk of Court

By: [                    ] , Deputy Clerk